And we'll hear counsel in Walker v. Carter. Good morning, your honors. May it please the court. My name is Gregory Berry. I represent the plaintiff appellant, Dwayne Walker, in this matter. Also, myself, pro se, regarding the sanctions motions. I would like to focus on two issues relating to the summary judgment motion this morning. But I'm happy to talk about anything else that comes up. The first is the copyright, the statute of limitations issue. And the second is the district court disregarding witness testimony. Regarding the copyright, the district court dismissed the copyright claim based on the statute of limitations. The problem with that is he found that an ownership dispute had arisen six years before the defendants, in fact, invented the ownership dispute. There's irrefutable evidence of this in the record. Right after the case started, I received a letter from defendants counsel saying that they had evidence that they would adduce that two individuals had created the logo. That evidence has never been adduced because it wasn't true. Later on, after they found the man in California, they changed the story to one individual who created the logo, allegedly. And even that man, Adrian Vargas, in his testimony says that he did not hear from the defendants until after the case had been filed. And secondly, in a court filing, the defendants stated to the district court that they had no knowledge of where the logo came from until they started looking into it after the case was filed. So it's simply impossible that there was an ownership dispute six years earlier in 2007. They didn't invent it until six years later. Walker, on the other hand, has always maintained that he owns the logo. In particular, there are two articles in magazines, hip-hop, prominent hip-hop magazines from 1998 and 2000, both of which state that Walker made the logo. And in addition, there are multiple conversations with witnesses about the logo back at the time that it was created in 1995. Regarding the contract, the district court disregarded a witness's testimony and that is... How is this contract capable of being performed within a year? It's not. It's subject to the statute of frauds, but it was written down, so it satisfies the statute of frauds. Where is it written down? It was written down on the contract. Is it in the record? No, because the writing was lost. That's why this is an evidentiary question. The writing was lost when my client was living with his uncle and he moved to visit some other family for a while in Atlanta. And during that time, his uncle unfortunately died. Before he was able to come back, his uncle's family had cleared out all of his property, including the contract. That is undisputed. There's no dispute about that story. They haven't raised any kind of issue with it. And the statute of frauds, the best evidence rule relating to that, says that unless, as long as the story is believable and there's no problem with the story, then we move on to the best evidence. Didn't the court find inconsistencies between Walker's recounting of the existence of that agreement and Mr. Sierra's? Yes, and that's the point. And couldn't the court find that based on that inconsistency that the plaintiff would be unable to sustain his burden at trial? That's the point. The testimony, in order to apply the sham fact doctrine, it has to be real, unequivocal, and inescapable disagreements in the testimony. And that's not what the district court found here. One of them remembers lines on the paper. The other one doesn't. One says that he thinks it was 1998. The other one says, I think it was 2000. Mr. Walker said he kept it in a drawer at his uncle's apartment. And Mr. Sierra testified or submitted information that he observed him carrying it around with him over the course of years. During that time, before Mr. Walker left to go to Atlanta, and also Mr. Sierra's testimony about that was he said, I'm not sure, maybe the 2000s, I don't remember. So it was very vague about the exact time. And the sham fact doctrine requires that a district court cannot engage in searching skeptical analysis of the testimony. That is for the jury. And also in this case, the sham fact doctrine, it's only allowed to disregard testimony if there is an affidavit that's submitted in response to a summary judgment motion. In this case, Mr. Sierra was named in the complaint. Mr. Walker's always known about him, but they haven't spoken in years. It took us a little time to locate him. He was located by 2014. He was deposed in 2014. The summary judgment motion didn't happen until 2016. The defendants had all of this testimony. It's for the jury to decide whether it is, how much weight to give it and the credibility of the witness. If there are no further questions, that's everything that I want to talk about today. I can reserve the rest of my time such as it is. Do you want to address the sanctions question? I don't think it's worth the court's time. You prefer to forget the whole thing. Yeah. Thank you. Your Honors, and may it please the Court. I represent one of the defendants in this action. My co-counsel, Miserato, will handle the cross-appeal portion and I will take questions pertaining to the defense of Mr. Walker and Mr. Berry's appeal. I want to address a couple of points that were raised here. First of all is this concept that the statute of limitations does not run until the defendant affirmatively disputes a claim. That's impossible, just as a matter of logic. You can't have a claim, you can't erase a claim that doesn't exist until after the defendant answers. But Judge Carter was very clear and said this twice, both in the original order and in the motion to reconsider. He made it clear that it is not when the defendant disputes the claim of ownership where the clock starts ticking. It is when the plaintiff is aware of the fact that the defendant is not acting consistently with ownership. In other words, more simply, it's actual or constructive knowledge as a test for when the statute of limitations accrues. Judge Carter went through, identified even earlier dates at which that could have happened, but basically used Mr. Walker's own testimony. 2007 was when he was supposed to be paid. He wasn't paid and did not sue until five years later. On the contract claim, a couple of corrections here. Nobody ever said that the contract existed. No one ever, on the defendant's side, no one ever thought the contract existed. We believe that this is a, the whole thing is a bit of a sham. The licensed defense was asserted in the alternative because a claim was asserted. And in fact, the standard here, there's a high burden to overcome the statute of limitations when the writing is lost. New York courts have been very thorough on that. The only time they really allow an exception is when someone was there, could describe the terms, can witness those terms. Mr. Sierra was never identified as a party who had seen the contract. Mr. Walker said, oh, I showed it to Mr. Mack and Mr. Panshon, but he was never identified as a witness until the defendant said, we need to, we want to move for summary judgment on the statute of frauds. All of a sudden, Mr. Sierra comes through, and even though he's represented by the same counsel, he can't get the story straight. He first had said he hadn't seen it. Then he said he had. Then he said there are two signatures. Mr. Walker said there's one. All kinds of things were incorrect. We detailed that in our brief, including the difference of the amount that was supposed to be paid. This was not a searching analysis like in Matheson v. Kitchen, which Mr. Walker cites. This is much more like Rojas v. Roman Catholic Diocese of Rochester, 660 F3rd 98 at 104-106, in which there was no credible testimony there. The court properly excluded it and found that there was certainly no corroborating evidence. All we had left was Mr. Walker's testimony, which had been undercut by his own friend. With that, I'll give the rest of my time to Ms. Arado, unless the court has questions. Thank you. I'm Cynthia Arado, and I represent the corporate defendants in this case. I'm going to address our cross-appeal, and I'm going to be speaking on behalf of all of us. If the denial of fees and sanctions in this case is not an abuse of discretion, it's hard to see when a denial would ever be an abuse. This is the poster child case for the over-aggressively filing of losing claims by a putative copyright holder that the Supreme Court in Kurtzang, citing the Sixth Circuit in Bridgeport, explained a fee award is meant to deter. Affirming the denial of fees on this extraordinary record will set a hazard that tells plaintiffs and their counsel they can file objectively unreasonable copyright claims and pursue them relentlessly with impunity in the hopes of extracting an unwarranted settlement from defendants that aren't willing to stick it out over five years and ultimately prevail, like we did here. The district court ignored the record and relied on an erroneous legal standard in denying our application for fees and sanctions. What was that standard, do you think? That the district court relied on or the correct standard? Yes. The district court stated in a catch-all sentence that it was not prepared to find that either party's actions were objectively unreasonable, frivolous, or entirely without merit, and that's at Supplemental Appendix 819. The court focused on three purported reasons related to the party's actions, but that's not the standard under the Copyright Act. Under the Copyright Act . . . What is the standard under the Copyright Act? Well, it's a non-exclusive list of factors, but the first and the one that the Supreme Court has told us should have primary importance is whether the claims are objectively unreasonable in either their facts or the law. It's not the actions that are . . . You can look to the unreasonable actions, and we believe the actions here are objectively unreasonable, and we put that all in our brief, but the standard is whether the claim was objectively unreasonable, and the district court didn't address that in his sanctions ruling, although he did address it when granting summary judgment in our favor, and he did find that the claim was objectively unreasonable in that ruling. The district court found that the copyright claim, that Walker and his counsel had advanced spurious arguments that this was not an ownership dispute, and that the statute of limitations had expired. The district court said, in granting summary judgment in our favor, Walker cannot plausibly maintain that this is a pure infringement action, and that it was clear-cut that Walker's claims were time-barred. In addition, there's evidence . . . Walker did not even have clear evidence that he owned the copyright. He made false statements to the Copyright Office and false allegations in his complaint. Didn't the district court, though, acknowledge what a hard-fought case this was? It was not dismissed at the pleading stage. He found that it was not . . . well, it wasn't facially frivolous. I would imagine that the defendants would have moved under 12b-6 or under 12c, correct? We did move to dismiss twice. And he denied it. And he denied it, but I will say he denied it, in particular on the copyright claim, because he found that there might be a factual theory that the plaintiff hadn't even advanced in opposing the motion to dismiss, that maybe there was infringement after this purported contract period had lapsed. But the testimony in the case made clear that that was completely inconsistent with Walker's own fantastical story about this supposed contract that was worth over $7 million by his account and that had a convoluted payment term to pay in 10, and then he changed that to 11 years. And under his own version of the facts, which he always knew, which is why they don't support finding that the copyright claim has merit. Under his supposed facts, he claimed that once that 10- or 11-year period had ended, the copyright was transferred to our clients. Are you arguing that the standard may not be just straight-up abuse of discretion, but under the copyright law, there is a parallel or companion legal test of the objective validity of the claim, if you will? I'm saying that it is an abuse of discretion standard, but that discretion is abused in several ways, all of which were present in this ruling, one of which is that the court has an erroneous view of the facts, which we think here the judge completely ignored all of the factual record, but also where the court fails to meaningfully or properly evaluate the legal standard. And here we say the district court failed to do that because, one, it stated a legal standard that is not the legal standard for fee awards under Copyright Act, and even under that standard, the ruling had no analysis whatsoever. It was just a cursory one sentence, and all the cases in our brief demonstrate that circuit courts do reverse for abuse of discretion under any one of those standards, and circuit courts have reversed for abuse of discretion the failure to grant fees to both prevailing defendants and prevailing plaintiffs. We also think that sanctions were properly awarded here. It should have been awarded because of the unbelievable conduct, and, I mean, the contract case has an unmistakable circumstantial stench of fraud. It's unmistakable. And the copyright claim is just a lie on that lie, because under their own admission, they only pled the copyright claim because we disputed that this contract existed. But the contract under their testimony gave my clients a license. So there was no legitimate basis to sue under copyright except their attempt to extract an unwarranted settlement by threatening that if they won the copyright claim, they'd get a permanent injunction. So it was completely misguided. There was an improper motive, and we think that that warrants not just a remand, but a reversal, because the record here is unmistakable. And if sanctions and fees aren't awarded here, you're giving a message that plaintiffs and their counsel can engage in this conduct with no recourse. Thank you. Mr. Berry, you've reserved two minutes. Thank you. A couple of quick things about the sanctions motion. Mr. Walker has four witnesses who were there at the time. Why wasn't your copyright claim patently frivolous? Why wasn't that claim sanctionable? First of all, because Mr. Walker has four witnesses that say that he did it. The defendants have no witnesses until the one they found after the case started that both Carter and Dash do not even corroborate that anyone other than Walker did it. They know Walker did it. And furthermore, the case itself was dismissed on the narrow grounds of the statute of limitations, that he should have known in 2007 that they disputed ownership. So if anything, it hasn't been adjudicated that the case is obvious at all, because it's only the statute of limitations. There's no way that Walker could have known about the statute of limitations claim when they didn't decide to dispute ownership until 2013. And again, Walker has four witnesses, the people that were there who helped him. They were there when they presented the logo to the defendants. Why wouldn't Walker have known about the statute of limitations claim? He was representing. Why was this not information that a responsible counsel was obligated to tell his client? Thank you for asking. This is important. The statute of limitations was based on a finding that there was an ownership dispute. In copyright claims, an ownership dispute only surfaces one time. For instance, in 1998, when there's an article stating that there's someone who claims he made the logo. If they had an ownership dispute with that, they should have done something about it. They didn't. They didn't in 2007. They didn't in 2010. They didn't even start looking to see if they could dispute the ownership until after the suit was filed. This isn't an ownership claim at all. It's an infringement claim. They know he made it. They've always known he made it. And it's only after the case started that they even, as the defendant's counsel says, that they even started investigating who made the logo. You know, Mr. Berry, the problem you have is that this case has a real stench to it. And the advocacy that you brought to this case falls well short of what we see and appreciate seeing in this circuit. Your Honor, the other... That's just my view. I understand. The other issue that the court, that the district court must take into account is the defendant's conduct in the case. I hope this court will agree that the defendant's conduct in this case has been far below what this court and the district court would... No. And that statement you just made is a further illustration of the point that I conveyed to you a moment ago. Okay. Okay. So, well, I... The district court felt that both parties did not act at the highest level of the profession, but that it was... He was not prepared to find that either party acted badly enough to sanction either party. And there was... He also did not find that the claim was... I'm sorry? That conclusion is on review. We know what he found. Yes. But it's abuse of discretion. He found that the claims were not unreasonable. He says that in his decision about the motion for sanctions. Thank you. We'll reserve the decision.